IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PAUL MOORE,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>JEFFERIES & CO., INC.,<br><br>　　　　Defendant. | Civil Action No. 08 CV 3<br><br>Judge Blanche M. Manning<br>Magistrate Judge Maria Valdez |

### DEFENDANT JEFFERIES & COMPANY, INC.'S MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

Plaintiff Paul Moore's complaint demands a finder's fee from defendant Jefferies & Company, Inc. ("Jefferies") for a business transaction that he did not find. Moore's breach of contract and *quantum meruit* claims both fail because Moore's allegations establish that he was not the procuring cause of the transaction at issue. Moore's breach of contract claim also fails for the additional reason that his allegations make clear that no contract between the parties was ever formed. Accordingly, the Court should dismiss Plaintiff's complaint, with prejudice, for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

### BACKGROUND

Moore is a self-described business broker who claims that Jefferies, an investment bank, owes him a finder's fee of at least $900,000. (*See* Compl. ¶¶ 5-6, 8-9.) Taking Moore's allegations as true for purposes of this motion, Ray Minella, one of Jefferies' managing directors, told Moore that Jefferies was interested in financing a certain racetrack/casino project in Indiana ("Racino"). (*Id.* at ¶ 7.) Minella allegedly "encouraged Moore to do whatever he could to enable

Jefferies to get that opportunity." *Id.*  According to Moore, Minella orally told him that he would be "paid for his efforts," or "compensat[ed] for his efforts" relating to the Racino financing.  (*Id.* at ¶¶ 10, 16.)  The complaint does not allege that Minella, or any other representative of Jefferies, discussed a specific fee arrangement with Moore, nor was there any discussion of what sort of "efforts" might entitle Moore to payment.

The complaint further alleges that Moore thereafter had discussions regarding the Racino transaction with a lawyer in Chicago, Gary Levenstein, and that it was Levenstein (not Moore) "who in turn arranged for Jefferies to make its presentation to the prospective borrower." (Compl. ¶ 9.)  Jefferies' presentation to the prospective borrower  (in which Moore was not involved) was successful, and Jefferies eventually closed the deal, allegedly earning a fee of over $6 million.  (*Id.*)  For his part, Moore simply alleges that "[b]ut for [his] efforts . . . Jefferies would not have obtained the investment banking assignment," and that, therefore, he is the procuring cause of the transaction, entitling him to a finder's fee of at least $900,000. (*Id.* at ¶¶ 5, 10, 12.)

Based on these allegations, Moore alleges two claims against Jefferies: breach of contract and *quantum meruit*.  As demonstrated below, both fail to state a claim upon which relief can be granted and should be dismissed.

## ARGUMENT

Plaintiff's allegations do not state a valid claim.  *First,* as a matter of Illinois law, the factual allegations of the complaint establish that Moore was *not* the procuring cause of Jefferies' transaction.  Accordingly, Moore is not entitled to a "finder's fee" and his breach of contract and *quantum meruit* claims must fail.  *Second,*  Moore's complaint does not state a breach of contract

claim for the additional and dispositive reason that Jefferies' alleged promise to "compensate" Moore for his "efforts" is too vague and indefinite to form a contract.

**I.     MOORE'S CLAIMS SHOULD BE DISMISSED BECAUSE MOORE'S ALLEGATIONS ESTABLISH THAT HE WAS NOT THE PROCURING CAUSE OF THE TRANSACTION.**

The foundation of Moore's complaint is that he served as a business opportunity "finder" for Jefferies. (Compl. ¶¶ 5, 10, 12.) He contends that Jefferies is either contractually or equitably obligated to pay him over $900,000 in return for this service. (Compl. ¶¶ 11-21.) Under Illinois law, a "finder" is "an intermediary [who] finds, introduces, and brings together parties to a business opportunity, leaving the ultimate negotiation and consummation of the business transaction to the principals." *Ruskin v. Rodgers*, 399 N.E.2d 623, 637 (Ill. Ct. App. 1979) (quoting 24 A.L.R.3d 1164). *See also Modern Tackle Co. v. Bradley Indus., Inc.*, 297 N.E.2d 688, 692-93 (Ill. Ct. App. 1973); *Kilbane v. Dyas*, 337 N.E.2d 217, 219 (Ill. Ct. App. 1975). Absent express contractual provisions to the contrary, and among other requirements, finders are entitled to a commission *only* if they are the procuring cause of a business transaction. *Modern Tackle*, 297 N.E.2d at 693.

The "procuring cause" of a transaction under Illinois law is the "predominating, efficient cause of the transaction." *Id.* at 693-94. That standard is much more stringent than mere "but for" causation. *See Mirza v. Fleet Retail Finance, Inc.*, 354 F.3d 687, 689-90 (7th Cir. 2003) (rejecting finder's claim that he was entitled to commission because he was "instrumental to the completion of the transaction"). As the *Modern Tackle* court observed, but for causation is not enough: "Where several brokers . . . ha[ve] contributed something without which the result would not have been reached . . . that one only is entitled to a commission who can show that his services were the really effective means of bringing about the sale[.]" *Modern Tackle Co.*, 297 N.E.2d at 694 (quoting with approval *Whitcomb v. Bacon*, 49 N.E. 742, 743 (Mass. 1898)).

By the terms of his own complaint, Moore was not the procuring cause of the Racino transaction. To begin, Moore alleges that he introduced Jefferies to Gary Levenstein, a Chicago lawyer who counted the prospective borrowers of the Racino project among his clients—not to the prospective borrowers themselves. (Compl. ¶ 6.) The complaint further alleges that it was *Levenstein*, not Moore, who arranged for Jefferies to make its presentation to the prospective borrower, bringing buyer and seller together. (Compl. ¶ 9 ("Soon thereafter, Minella contacted Levenstein, who in turn arranged for Jefferies to make its presentation to the prospective borrower.")). Moreover, the complaint does not allege that Moore was the first to bring the Racino project to Jefferies' attention. (*See* Compl. ¶ 7.) Thus, by Moore's own allegations, he did not introduce the parties to the transaction, he was not responsible for bringing them together to negotiate, and he did not discover the transaction for Jefferies. These factors in and of themselves are enough to defeat any possibility that Moore is a "finder" or the procuring cause of the transaction. *See Modern Tackle,* 297 N.E.2d at 694 (holding that business broker was not entitled to finder's fee where he did not "put buyer and seller together"); *Plastics & Equip. Sales Co., Inc. v. DeSoto*, 415 N.E.2d 492, 497 (Ill. Ct. App. 1980) (holding that finder could not have been procuring cause of sale where seller had enjoyed previous relationship with buyer).

Indeed, the only support Moore offers for the bald assertion that he was the procuring cause of the Racino transaction is his allegation that "[b]ut for Moore's efforts . . . Jefferies would not have obtained the investment banking assignment." (Compl. ¶¶ 5, 10, 12.) Under Illinois law, "but for" causation is simply insufficient to show that Moore was the procuring cause of the transaction. *See Modern Tackle*, 297 N.E.2d at 693-94 (rejecting "but for" causation standard for procuring cause, instead adopting the "predominating, efficient cause of the transaction" standard). Far from showing that Moore was a procuring cause of the Racino

transaction under Illinois law, the complaint shows definitively that he was not. Indeed, under the facts alleged in the complaint, if any third party was the procuring cause of the Racino transaction it was Levenstein, not Moore.

Moore's own factual allegations therefore doom both his breach of contract and his *quantum meruit* claims. Because Moore was not the procuring cause of the transaction, Jefferies could not have breached the alleged "finder's fee" contract. *Id.* at 693 ("[W]e hold that a business opportunity broker or finder must be the procuring cause of the transaction unless the contract specifies otherwise."). Likewise, in order to state a valid *quantum meruit* claim, Moore must allege that he conferred upon Jefferies a benefit for which justice requires payment, and that he had a reasonable expectation that Jefferies would pay for the services he rendered. *Cruz v. Stapleton*, 622 N.E.2d 1253, 1257 (Ill. Ct. App. 1993); *Plastics & Equip. Sales Co.,* 415 N.E.2d at 493. Neither can be true unless Moore was the procuring cause of the transaction. *See Cruz*, 622 N.E.2d at 1257 (affirming judgment against broker on *quantum meruit* claim where broker had no reasonable expectation of compensation because he was not the procuring cause of a sale); *Progressive Realty Advisors, Inc. v. Great-West Life Assurance Co.*, 783 F. Supp. 1114, 1120-21 (N.D. Ill. 1992) (applying Illinois law and dismissing broker's *quantum meruit* claim because broker did not allege that he procured sale and therefore did not confer a valuable service). Accordingly, Moore's breach of contract and *quantum meruit* claims should be dismissed.

## II. MOORE'S BREACH OF CONTRACT CLAIM SHOULD BE DISMISSED FOR THE ADDITIONAL REASON THAT NO CONTRACT WAS FORMED.

Moore's breach of contract claim should be dismissed because the allegations of the complaint establish that the parties did not form a contract. A contract cannot be formed unless its essential terms are definite and certain. *Mays v. Trump Indiana, Inc.*, 255 F.3d 351, 358 (7th

Cir. 2001) ("[T]he existence or non-existence of a contract turns on whether material terms are missing."); *Panko v. Advanced Appliance Service*, 371 N.E.2d 3, 5 (Ill. Ct. App. 1977) ("[I]t is well established that in order for an oral contract to be binding and enforc[ea]ble, its terms must be definite and certain." ).  The essential terms of a contract are not "definite and certain" unless a court is able to ascertain from the contract itself what the parties have agreed to do and when the contract has been breached.  *Academy Chicago Publishers v. Cheever*, 578 N.E.2d 981, 983-84 (Ill. 1991).  Under Illinois law, "Where the essential terms are lacking certainty, courts will not supply the missing essential terms."  *O'Neil & Santa Claus, Ltd. v. Xtra Value Imports, Inc.*, 365 N.E.2d 316, 318 (Ill. Ct. App. 1977).  *See also Academy Chicago Publishers*, 578 N.E.2d at 984 ("It is not the role of the court to rewrite the contract and spell out essential elements not included therein."); *Shults v. Griffin-Rahn Ins. Agency, Inc.*, 550 N.E.2d 232, 236 (Ill. Ct. App. 1990).  To the contrary, there is a strong presumption *against* inserting and enforcing contract terms that could easily have been included in the contract but were not.  *Klemp v. Hergott Group, Inc.*, 641 N.E.2d 957, 962 (Ill. Ct. App. 1994).

Moore's contract claim is grounded on the allegation that Jefferies represented to Moore that it would "compensate Moore for his efforts in causing and enabling Jefferies to obtain [the Racino] financing project."  (Compl. ¶ 16.)  Moore's alleged contract is fatally indefinite because it does not contain at least two essential terms: the alleged fee that Moore would be paid and the alleged services that Moore would be required to perform in exchange for that fee. *See O'Neil*, 365 N.E.2d at 318-19 (affirming holding that contract was indefinite and unenforceable where the parties had not agreed upon what services plaintiff was to perform or what the agreed commission rate would be).

The failure of the complaint to allege that the parties agreed to any particular fee amount or structure is sufficient alone to show that no contract was formed. *See Panko*, 371 N.E.2d at 5-6 (affirming judgment against the plaintiff where parties had not agreed to price term, rendering plaintiff unable to establish the existence of a contract with clear and definite terms); *O'Neil*, 365 N.E.2d at 318-19 (contract indefinite in part because it did not include a commission rate). Without adding the essential price term, which the Court is forbidden to do under Illinois law (*see, e.g., Academy Chicago Publishers*, 578 N.E.2d at 984), it would be impossible for the Court to determine whether Jefferies breached the alleged contract.

The alleged contract's silence as to what services Moore was supposedly to perform to earn his (unspecified) compensation likewise renders the alleged "contract" fatally indefinite. (Compl. ¶ 16.) Because of the absence of this essential term, a court could never determine whether Moore breached (or complied with) his obligations under the "contract." *O'Neil*, 365 N.E.2d at 318; *Rosenthal v. Battery Partners VI, L.L.C.*, 2007 WL 2028169 at *11 (N.D.Ill. July 10, 2007) (noting that purported oral contract for finder's services was vague and unenforceable because "the parties never discussed what duties the [plaintiff] would have").

Moore's allusions to custom and practice (Compl. ¶ 17) do not fill the gaps in the alleged contract. A "finder's" contract is "an arrangement by which an intermediary finds, introduces, and brings together parties to a business opportunity[.]" *Ruskin,* 399 N.E.2d at 637. As discussed in Section I, Moore does not allege that Jefferies asked him to, or that he did, any of those things. Instead, Moore merely put Jefferies in touch with a lawyer, who in turn put Jefferies in touch with the potential borrower. (Compl. ¶ 9.) Moreover, and tellingly, Moore does not even allege that he expected to be compensated at any particular rate to be determined by reference to custom and practice, much less that Jefferies had that expectation. (*See* Compl.

¶ 16.)  No custom and practice is alleged (nor could there be) for any fee associated with putting a party in touch with another intermediary (Levenstein) who in turn puts the party in contact with the borrower (and serves as the procuring cause of the transaction).  *See Riemer Bros., Inc. v. Marlis Constr. Co.*, 380 N.E.2d 1160, 1164  (Ill. Ct. App. 1978) (where subject of the alleged contract was not subject of any long standing practice, custom evidence could not supplement missing price term).

In sum, there is no enforceable contract here and the breach of contract claim must be dismissed.

## CONCLUSION

For all the reasons stated above, Moore's complaint should be dismissed, with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(6).

Dated: February 6, 2008                                         Respectfully submitted,


 /s/ James R. Daly
James R. Daly
  Bar Registration No. 5181714
  E-mail:  jrdaly@jonesday.com
Nicole C. Henning
  Bar Registration No. 6286386
  Email: nhenning@jonesday.com
JONES DAY
77 West Wacker, Suite 3500
Chicago, IL  60601-1692
Telephone:     (312) 782-3939
Facsimile:     (312) 782-8585

Attorneys for Defendant Jefferies & Company, Inc.

## **CERTIFICATE OF SERVICE**

      The undersigned, an attorney, hereby certifies that on February 6, 2008, I electronically filed the foregoing Motion to Dismiss with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following at their e-mail address on file with the Court:

           Bruce S. Sperling
           Greg Shinall
           Matthew Slater
           SPERLING & SLATER, P.C.
           55 W. Monroe St., Suite 3200
           Chicago, IL 60603

                /s/ Nicole C. Henning
                One of the Attorneys for Defendant Jefferies & Co., Inc.