IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINIOS
EASTERN DIVISION

| | | |
|---|---|---|
| PAUL MOORE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 08 CV 3 |
| | ) | |
| JEFFERIES & CO., INC., | ) | Hon. Blanche M. Manning |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF MOORE'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS**

Plaintiff Paul Moore introduced Jefferies & Co. ("Jefferies") to an opportunity to provide hundreds of millions of dollars in financing for a massive project to transform an existing race track in Indiana into a combined race track and casino complex - a "Racino." Moore worked on Jefferies' behalf and, only because of Moore's efforts was Jefferies able to secure the deal, and thereby earn millions of dollars in fees for financing the Racino. Jefferies now refuses to pay Moore anything at all in compensation for his services. Moore, therefore, brought the instant Complaint asserting a claim for *quantum meruit* (Count I) and a claim for breach of contract (Count II). Jefferies moved to dismiss based on issues of fact that are not subject to disposition on a Fed. R. Civ. P. 12(b)(6) motion to dismiss.

Jefferies seeks to dismiss Count I based on the argument that Moore was not the "procuring cause" of the Racino opportunity. Moore's allegations, however, are sufficient to answer this argument. He has alleged that he was the "procuring cause" and has alleged nothing inconsistent with that allegation. Thus, the pleading itself resolves

this issue. Further, Moore is entitled to compensation for his labors even if he were not the "procuring cause."

Jefferies seeks to dismiss Count II because it contends that a contract must have a price term, but Jefferies has the law wrong. In Illinois, the lack of a price term will not invalidate a contract; rather a reasonable price will be implied. Further, Moore's allegations are consistent with the existence of an agreement upon the price. Thus, Jefferies motion should be denied.

## BACKGROUND

Prior to the events at issue, Jefferies hired Moore to help Jefferies become involved in a Caribbean real estate development deal. There, Jefferies agreed to pay Moore an industry standard 15% of its total fees as a finder's fee. Compl. ¶¶5, 14. Thereafter, Moore learned of the Racino construction project and its need for financing from conversations with Gary Levenstein. *Id.* ¶6. Levenstein, an attorney working on behalf of the Racino developers, had "substantial duties and responsibilities concerning the procurement of financing for the Racino project." *Id.* Moore immediately considered involving Jefferies to provide financing for the project. *Id.* ¶¶6, 17.

Moore approached Ray Minella, Jefferies' Managing Director, to discuss the possibility of Jefferies providing financing for the Racino project. Compl. ¶7. Minella responded that "Jefferies would very much like to have a meaningful opportunity to bid on the Racino business, and encouraged Moore to do whatever he could to enable Jefferies to get that opportunity." Compl. ¶7. After receiving the go-ahead from Minella, Moore set about to convince Levenstein to use Jefferies to finance the Racino project. Compl. ¶8. Jefferies and Minella, "acknowledged to Moore and Levenstein that if

Jefferies obtained the Racino financing engagement, Moore would be paid for his efforts." Compl. ¶10.

Moore's efforts were critical to the Racino retaining Jefferies for financing. Prior to Moore's intervention on behalf of Jefferies, Levenstein had been working with a different bank for the Racino financing. Compl. ¶¶6, 8. "[I]t was only because of Moore's efforts and enthusiastic support of Jefferies that Levenstein came to believe that Jefferies would be the right investment bank for the Racino financing." Compl. ¶8. As Levenstein put it, "Moore (verbally) slapped me upside the head" to convince Levenstein that Jefferies was best suited to provide financing. Compl. ¶8.

After convincing Levenstein and thus, the Racino, to negotiate with Jefferies, Moore also arranged their meeting: "Levenstein . . . asked Moore to arrange to have Jefferies contact him to make a presentation. Moore then contacted Minella and informed him that Moore had arranged for Jefferies to make its presentation for the Racino financing and that Levenstein expected Minella to call." Compl. ¶9.

Moore brought the opportunity to Jefferies, convinced Levenstein (and through Levenstein, Racino) to consider Jefferies, and then actually arranged the meeting between the parties. Compl. ¶¶8-10. As a result, Jefferies "received the Racino project's business…and earned a fee in excess of $6 million." Comp. ¶9. Thus, "Moore fully performed his obligations…and was the procuring cause of the Jefferies' engagement," Compl. ¶19. Moore in entitled to be compensated for his substantial services to Jefferies, without which Jefferies would never have been hired to finance Racino.

3

## DISCUSSION

Jefferies moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Jefferies, however, failed to identify the standards governing such a motion. Under the applicable standards Moore's allegations require the denial of Jefferies' motion:

> In ruling on a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), the court must assume the truth of all facts alleged in the complaint, construing the allegations liberally and viewing them in the light most favorable to the plaintiff. To state a claim, the complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief." …the factual allegations must 'plausibly suggest that the plaintiff has a right to relief, raising that possibility above a "speculative level."

*Cole v. City Of Chicago*, No. 06 C 4704, 2008 WL 68687, *3, (N.D. Ill. Jan. 4, 2008) (citations omitted). Jefferies may only prevail here if it shows that the facts the plaintiff has pled are *necessarily* incompatible with the relief sought. *Higgins v. Conopco, Inc.*, No. 06 C 7077, 2008 WL 216380, *4 (N.D. Ill. Jan. 23, 2008) ("Plaintiffs did not plead facts that negate the possibility that the Transportation Agreement was valid and enforceable.").

**I.    Count I States a Valid Claim for *Quantum Meruit*.**

**A.    Moore Sufficiently Alleges That He Was the Procuring Cause.**

The allegations in the Complaint explicitly state that Moore was the "procuring cause" of Jefferies obtaining the opportunity to finance Racino. (Compl. ¶12, 19) That allegation alone is sufficient to resolve this motion. Under the standards described above, Moore has stated a claim that he brought Jefferies to the attention of Racino and that he brought Racino to the attention of Jefferies.

Defendant argues that Moore was not the "procuring cause" and that he would only be entitled to a finder's fee if he were the procuring cause. Both arguments are

4

incorrect and are defeated by the allegations of the Complaint. Moore: (a) brought the Racino opportunity to Minella (Compl. ¶¶6-7); (b) convinced Levenstein and, through him, the Racino developers to consider acquiring financing from Jefferies by extensive efforts (Compl. ¶8); and (c) arranged the meeting between Jefferies and Levenstein. Compl. ¶9. Moore has sufficiently pled that he was the procuring cause. Any further determination of whether Moore was the true procuring cause "is a question of fact for the jury." *Modern Tackle Co. v. Bradley Industries, Inc.*, 11 Ill. App. 3d 502, 508, 297 N.E.2d 688, 693 (1st Dist. 1973).

Being the "procuring cause" includes being "the proximate cause of the procurement of the sale." *Ruskin v. Rodgers*, 79 Ill. App. 3d 941, 960, 399 N.E.2d 623, 637 (1st Dist. 1979) (citing *Hennessy v. Schmidt,* 521 F.2d 1282, 1286 (7th Cir. 1975)); *see also Stephen L. Winternitz, Inc. v. Nat'l Bank of Monmouth*, 289 Ill. App. 3d 753, 758, 683 N.E.2d 492, 496 (1st Dist. 1997) ("[a] finder must be the proximate **or** procuring cause of an eventual transaction," *citing Modern Tackle* (emphasis added)). Moore, as alleged in the complaint, "brought one party to the acquisition to the attention of the other party . . . the acquisition actually took place through his efforts." *Ehrman v. Cook Electric Co.,* 630 F.2d 529, 530 (7th Cir. 1980). Plainly the allegations establish that Moore was the proximate cause, the cause in fact, and that the deal took place only through his efforts. Compl. ¶¶ 19, 9.

Jefferies attempts to defeat the plain allegations of the Complaint by misstating those allegations. Jefferies argues that the Complaint may only be read to state that it was Levenstein who introduced the "parties," *i.e.,* Jefferies and Racino. (Mem. at 4, *citing* Compl. ¶9). The allegations answer this argument. Levenstein, an attorney, was

working on behalf of Racino and was charged with arranging financing for Racino. (Compl. ¶ 6) When Moore introduced Minella to Levenstein, he was introducing Jefferies to Levenstein for the purpose of providing financing to Racino – it was not a general introduction. (Compl. ¶ 9) Jefferies implies that Levenstein was the finder, but when Moore introduced him to Minella, the opportunity had already been found.

Moreover, the Complaint alleges that Levenstein was acting on behalf of Racino in attempting to obtain financing. Thus, Moore's introduction of Jefferies to Levenstein is the same, as a matter of law, as an introduction to Racino. It makes no difference whether Moore contacted Racino directly or worked through its attorney/agent Levenstein. *Sakun v. Taffer*, 268 Ill. App. 3d 343, 350, 643 N.E.2d 1271, 1276 (1st Dist., 1994) (A "party who retains an attorney holds out the attorney as an authorized agent to receive correspondence and notices . . . Notice to an attorney while engaged in his client's business is notice to the client."). When Moore introduced Jefferies to Levenstein, he introduced Jefferies to Racino. *Welsh v. R.W. Bradford Transp.*, 231 F.R.D. 297, 299 (N.D. Ill. 2005) (it is an "unquestioned principle that has obtained from the beginning of the Republic that notification to one's lawyer or other agent acting within the scope of the agency constitutes notification to the client."). Therefore, Jefferies' argument fails not only as a matter of logic and fact, but also as a matter of law.

Moreover, the cases cited by defendant illustrate that the question of whether an individual is a procuring cause is a question of fact and that it would be inappropriate to dismiss the allegation pursuant to a 12(b)(6) motion. All but one of the cases cited by defendant on this issue were decided after discovery and based on the facts. *See Ruskin*, 399 N.E.2d at 625 (appeal from trial verdict), *Modern Tackle,* 297 N.E.2d at 689-690

6

(appeal from post trial *judgment not withstanding the verdict* motion), *Whitcomb v. Bacon,* 49 N.E. 742, 743 (Mass. 1898) (appeal from trial verdict), *Kilbane v. Dyas,* 33 Ill. App. 3d 439, 439-440, 337 N.E.2d. 217, 219 ( 2d Dist. 1975) (appeal from summary judgment), *Mirza v. Fleet Retail Fin. Inc.,* 354 F.3d 687, 688 (7th Cir. 2003) (appeal from summary judgment), *Plastics & Equip. Sales Co., Inc. v. DeSoto, Inc.*, 91 Ill. App. 3d 1011, 1012, 415 N.E.2d 492, 494 (1st Dist. 1980) (appeal from summary judgment), *Cruz v. Stapleton,* 251 Ill. App. 3d 833, 834, 622 N.E.2d. 1253, 1254 (2d Dist. 1993) (appeal from trial verdict.).

Jefferies' citation to *Progressive Realty Advisors, Inc. v. Great-West Life Assurance Co.,* 783 F. Supp. 1114, 1121 (N.D. Ill. 1991), the only cited case decided on a motion to dismiss, is the proverbial "exception that proves the rule." In *Progressive*, the plaintiff pled itself out of a cause of action because it acknowledged that the offer which it procured was never accepted. *Id.* ("Great-West rejected the offer procured by the plaintiff and, instead, entered into a contract with a different party."). According to the defendants own authority, the only time a dismissal is appropriate on a 12(b)(6) motion to dismiss is when the deal falls apart. *See also Plastics & Equip. Sales*, 415 N.E.2d at 497 (sale plaintiff worked on was not the sale that eventually took place); *Cruz*, 622 N.E.2d at 1255 (broker denied compensation for negotiating a real estate sale where sale never took place). That argument does not apply here, as the deal closed and Jefferies "earned a fee in excess of $6 million" based on Moore's efforts. Compl. ¶9.

Jefferies' argument requires that this court infer from the Complaint that Moore's introduction of Jefferies to Levenstein did not, as a matter of law, introduce Jefferies to

Racino. Because Levenstein was acting on Racino's behalf, however, the allegations properly state a claim.

### B. Moore is Entitled to *Quantum Meruit* Even if He Was Not The Procuring Cause.

The equities require that Jefferies compensate Moore for efforts that earned Jefferies millions of dollars, even if Moore was not the procuring cause of the transaction. In order to be entitled to *quantum meruit*, Moore must allege that it would be unjust for Jefferies not to pay him for the services he performed on Jefferies behalf. *Business Dev. Servs., Inc. v. Field Container Corp.,* 96 Ill. App. 3d 834, 844, 422 N.E.2d 86, 95 (1st Dist. 1981) (ruling for finder-plaintiff on motion to dismiss *quantum meruit* and holding that "the basis for recovery under quantum meruit is defendant's receipt of a benefit from plaintiff which would be unjust for defendant to retain without paying for it"). Here, it would be unjust for Jefferies to obtain the benefit of Moore's labor, promise Moore compensation, and the fail to compensate him, in any way. *See* Compl. ¶8 (Minella "encouraged Moore to do whatever he could" to get Jefferies an opportunity to provide the Racino financing); Compl. ¶10 (Jefferies "acknowledged that Moore would be paid for his efforts."); Compl. ¶13 (Jefferies "knowingly availed itself of Moore's services" and "received the benefit of those services"). Moore brought Jefferies an opportunity at Jefferies request. Moore's efforts on Jefferies' behalf were not a gift and he has earned his share of Jefferies' profit.

In *Mirza v. Fleet Retail Finance, Inc.*, No. 01 C 0566, 2002 WL 31526549, *5, (N.D. Ill., Nov. 13, 2002), *aff'd* 354 F.3d. 687 (7th Cir. 2004), the Court explicitly held that the finder-plaintiff did not need to allege that it was the procuring cause to sustain its *quantum meruit* claim:

> [T]he court concludes that the undisputed facts establish that plaintiff was not the "procuring cause" of the loan, and is therefore not entitled to the commission customarily awarded to a business opportunity finder. Nonetheless, drawing all inferences in favor of plaintiff, the court cannot hold unequivocally that plaintiff is not entitled to some payment for the services he rendered. Indeed, according to plaintiff's deposition testimony, he communicated his expectation of a fee to defendant on more than one occasion, and defendant thereafter persisted in utilizing information provided by plaintiff.

Thus, Moore is entitled to a fee based on his efforts on behalf of Jefferies because he communicated those expectations to Jefferies. Compl. ¶¶8, 9, 10, 14. Count I, therefore, should not be dismissed.

## II.    Count II States a Claim for Breach of Contract

Under Illinois law, to state a claim for breach of contract, a plaintiff must allege "(1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff" to sustain a breach of contract claim. *Cooper v. Durham School Serv.*, No. 03 C 2431, 2003 WL 22232833, *4 (N.D. Ill. Sep. 22, 2003) (citations omitted.). Moore sufficiently alleges that: (1) the parties entered into a contract under which Moore would arrange "for Jefferies to bid for and obtain the Racino financing project" business, Compl. ¶18; (2) Moore performed those services, Compl. ¶19; (3) Jefferies breached the contract by failing to pay Moore, Compl. ¶20-21; and (4) Moore was injured. *Id.* Jefferies' sole response is that the contract is not enforceable since it lacked an explicit price term. Jefferies' argument is incorrect, both as a matter of law and as a matter of the facts alleged in the Complaint.

9

### A.     The Contract is Enforceable Even Absent A Price Term.

Jefferies argues that price term is an essential term of this contract and that absent agreement on a price, no contract will be enforced. (Mem. at 5-6) Jefferies is wrong. Pursuant to Illinois law, the price term generally is not an essential term of a contract Rather, when "a contract that does not contain a price term, it is implicit that the price charged under the contract will not exceed a reasonable price for the services in question." *Rush-Presbyterian-St. Luke's Med. Center v. Hellenic Republic*, 980 F.2d 449, 453 (7th Cir. 1992). The Illinois Appellate Court has ruled that a "reasonable" price is an "implied term under contract law where a contract is silent as to price or another, more specific method of determining price." *In re Marriage of Schmidt*, 292 Ill. App. 3d 229, 237-238, 684 N.E.2d 1355, 1361-1362 (4th Dist. 1997); *see also Victory Mem. Hosp. v. Rice,* 143 Ill. App. 3d 621, 623, 493 N.E.2d 117, 119 (2d Dist. 1986) ("In Illinois, however, where there is a contract, express or implied, under which one party supplies articles or services to another and there is no provision setting out the amount the supplier is to be compensated, the law implies that there is an agreement to pay a reasonable price for the goods and services.").

Jefferies cites only one case contrary to this established rule of law in Illinois. In *Panko v. Advanced Appliance Serv.*, 55 Ill. App. 3d 301, 304, 371 N.E.2d 3, 5 (1st Dist. 1977), the court held that there was no meeting of the minds regarding the specific minimum price to be paid for multiple visits by a service technician. But *Panko* is easily distinguishable because there was contrary testimony from both parties as to whether the technician communicated that a second visit would result in a "minimum service charge" irrespective of the amount of time the repair took to complete. *Id.* Unlike the agreement

10

here, the price term was not silent; rather there was active disagreement as to whether a price negotiation had occurred and whether a price was agreed. *Panko* was not seeking a "reasonable fee," it was asserting that there had been a fee negotiation which had resulted in an agreed price. Thus, *Panko* is irrelevant to the question of whether a reasonable price term can be implied.[1]

Moreover, another case cited by Jefferies, *Rosenthal v. Battery Partners VI, L.L.C.*, No. 01 C 8528, 2007 WL 2028169, *11, (N.D. Ill. July 10, 2007), establishes that an analogous transaction, like the one Moore and Jefferies had just concluded for the Caribbean development, can establish such "missing terms":

> We need not speculate about whether the parties would have been able to agree on these missing terms because, unlike most cases, we have the perfect control group. Sandor, who had the same agreement as plaintiff and was represented by the same attorney, did enter into a final agreement. There is no reason to think that the defendants would not have entered into the exact same agreement with Rosenthal. Sandor's agreement thus provides a clear "interpretative path" to the missing terms.

A reasonable price may be implied into the contract as a matter of law. The parties' prior deal establishes such a reasonable price. Thus, Jefferies motion should be denied.[2]

---

[1] None of Jefferies' other cases establishes that a missing price term, in itself is enough to invalidate a contract. Only two of the cited cases involve any issue like a missing price term and in both cases, the courts note a laundry list of other essential missing terms. *See Mays v. Trump Indiana, Inc.*, 255 F.3d 351, 358 (7th Cir. 2001) (a case inapplicable because it applies Indiana law, but in any event includes unresolved essential terms like: "Would the ... 'notes' be recourse or nonrecourse? What if any interest rate would attach to the "loan"? ... What was the duration of the loan? What were its terms of repayment? Would security for the loan ... be required?"); *O'Neil & Santa Claus, Ltd. v. Xtra Value Imports, Inc.*, 51 Ill. App. 3d 11, 14, 365 N.E.2d 316, 318 (3d. Dist. 1977) (missing essential terms include "the duration of the relationship, the area in which the plaintiff was to solicit sales, whether sales quotas were imposed as part of the agreement, the extent of the services plaintiff was to perform, and what the agreed commission rate would be."). Here there is a simple contract: if Jefferies successfully acquired the financing of Racino, it would pay Moore. No other terms were necessary or missing

[2] Jefferies cites *Riemer Bros., Inc. v. Marlis Constr. Co.*, 64 Ill. App. 3d 80, 84, 380 N.E.2d 1160, 1164 (2d Dist. 1978) for the proposition that custom and practice cannot be implied if the parties have not dealt with each other – but the case stands for just the opposite proposition. First, the court held that the parties had no relevant course of performance with each other because their only history together involved interim bills that there was is no evidence that the customer ever saw. *Id.* Even though the evidence established that there was no relevant course of performance between the parties, the still analyzed whether there was a

B.  **Whether The Parties Agreed on a 15% Fee is a Question of Fact.**

Jefferies' argument should also be rejected because the question of whether Jefferies had agreed on the customary fee of 15% is a question of fact. The Complaint alleges that Jefferies "acknowledged to Moore and Levenstein that if Jefferies obtained the Racino financing engagement, Moore would be paid for his efforts." (Compl. ¶10) Moore further alleges that "Minella specifically acknowledged to Moore and Levenstein that Jefferies would compensate Moore for his efforts in causing and enabling Jefferies to obtain this financing project." *Id.* ¶ 16. Thus, the question of whether Minella agreed to the customary 15% price term as had been previously agreed to between Jefferies and Moore is a question of the "intent of the parties ... to be determined by the trier of fact." *Panko* 371 N.E.2d at 6; *see also Hodgman, Inc. v. Feld*, 113 Ill. App. 3d 423, 428, 447 N.E.2d 450, 454 (2d Dist. 1983) ("Whether an oral contract exists, its terms and conditions, and the intent of the parties are questions of fact to be determined by the trier of fact"). If Minella understood that his statements would obligate Jefferies to pay a 15% fee, then there is a set of facts that requires the denial of this motion to dismiss.

Moore has alleged that "[p]ursuant to custom and practice, including the parties own prior dealing, the finder's fee for the services provided by Moore is 15% of any fee earned by Jefferies." (Compl. ¶17). Thus, the question of whether Jefferies had agreed to 15% is a question of fact and is not susceptible to a motion to dismiss.

---

"customary practice" in the industry. *Id.* Only when the court found there was no customary price, but that it "fluctuated from year to year" did the Court decide not to imply the price term. *Id.* Thus, if there is a customary price, it may be implied. *See Ehrman*, 630 F.2d at 531 (upholding a ruling for the plaintiff in a finder's fee case because the "customary fee arrangement in this field ... is a reasonable measure of damages for the implied contract.").

## CONCLUSION

For the reasons stated herein, plaintiff Paul Moore respectfully requests that this Court deny the 12(b)(6) Motion to Dismiss brought by Defendant Jefferies & Co., Inc.

Dated: March 11, 2008                                           PAUL MOORE


                                                                By:  /s/ Michael G. Dickler
                                                                        Michael G. Dickler

Bruce S. Sperling
Michael G. Dickler
Matthew Slater
Sperling & Slater, P.C.
55 W. Monroe Street, Suite 3200
Chicago, IL 60603
(312) 641-3200