IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **PAUL MOORE,**<br><br>      **Plaintiff,**<br><br>   v.<br><br>**JEFFERIES & CO., INC.,**<br><br>      **Defendant.** | Civil Action No. 08 CV 3<br><br>Judge Blanche M. Manning<br>Magistrate Judge Maria Valdez |

**DEFENDANT JEFFERIES & COMPANY, INC.'S REPLY IN SUPPORT OF ITS
MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)**

Plaintiff makes four principal arguments to counter Defendant's motion to dismiss: (1) the "procuring cause" standard in Illinois is actually a proximate cause standard; (2) Gary Levenstein was necessarily an agent of the Racino borrowers because he is a lawyer; (3) finder's services are compensable through *quantum meruit* even if the finder is not the procuring cause of the transaction; and (4) the Court should imply a "reasonable" price term to an otherwise indefinite and unenforceable service contract, even when other equally essential terms, such as plaintiff's duties and obligations under the contract, are also missing. Each of these arguments is contrary to Illinois law and none of them can salvage Moore's complaint.

**I.  MOORE'S COMPLAINT DOES NOT STATE A QUANTUM MERUIT CLAIM.**

    **A.  Moore's allegations establish that he was not the procuring cause of the transaction.**

Regardless of Moore's conclusory allegations to the contrary (Comp. at ¶¶ 5, 12, 19), he simply cannot be the procuring cause of Jefferies & Company, Inc.'s ("Jefferies'") transaction under Illinois law unless his factual allegations could establish that he was  the "predominating,

efficient cause of the transaction." *Modern Tackle Co. v. Bradley Indus., Inc.*, 297 N.E.2d 688, 693-94 (Ill. Ct. App. 1973). As Jefferies' motion to dismiss and Moore's own response to that motion show, Moore's allegations do not meet the *Modern Tackle* standard. *First*, contrary to Moore's unsupported claims (Resp. at 3, 4, 5), Moore did not introduce the Racino opportunity to Jefferies. Indeed even a cursory reading of Moore's complaint reveals that he artfully avoids alleging (because he cannot) that Jefferies was not aware of the transaction before Minella's conversation with Moore. (*See* Comp. ¶ 7.) *Second*, by the very terms of the complaint, Moore did not bring the parties together—Levenstein did. (Compl. ¶ 9 ("Soon thereafter, Minella contacted Levenstein, who in turn arranged for Jefferies to make its presentation to the prospective borrower.").)

Apparently realizing that he cannot meet the relevant standard, Moore's response attempts to change it. He argues that he needs to show only that he was the "proximate cause" of the transaction to state a claim. (Resp. at 5.) There are significant differences between "proximate cause" and "procuring cause" under Illinois law. Most important for present purposes, there can be more than one "proximate cause" of a transaction, but only one "procuring cause." *Compare James v. Checker Taxi Co.*, 159 N.E.2d 12, 14 (Ill. Ct. App. 1959) (proximate cause "need not be the sole cause, nor the last or nearest cause. It is sufficient if it concurs with some other cause acting at the same time, which, in combination with it, causes the injury.") (quoting with approval *Seith v . Commonwealth Elec. Co.*, 89 N.E. 425, 427 (Ill. 1909)), *with Modern Tackle,* 297 N.E.2d at 694 ("Where several brokers . . . ha[ve] contributed something without which the result would not have been reached . . . that one only is entitled to commission who can show that his services were the really effective means of bringing about the sale[.]") (quoting with approval *Whitcomb v. Bacon*, 49 N.E. 742, 743 (Mass. 1898)).

Moore offers no support for the substitution of "proximate" for "procuring" cause. Indeed, he cites only two opinions in support of his proposed departure from the *Modern Tackle* standard, *Ruskin v. Rodgers*, 399 N.E.2d 623, 637 (Ill. Ct. App. 1979), a case discussing the difference between finders and brokers, and *Stephen L. Winternitz, Inc. v. National Bank of Monmouth*, 683 N.E.2d 492 (Ill. Ct. App. 1997), a case simply discussing the precise contours of what constitutes a "sale" in the brokerage context. Neither case even purports to change the procuring cause standard applicable in a finder case. Moore's argument boils down to the contention that he was a "critical" step in the eventual consummation of the transaction. (Resp. at 3.) That is plainly insufficient to make him the single "procuring cause" entitled to a finder's fee. *Modern Tackle,* 297 N.E.2d at 694; *see also Progressive Realty Advisors, Inc. v. Great-West Life Assurance Co.*, 783 F. Supp. 1114, 1121 (N.D. Ill. 1992) (dismissing *quantum meruit* claim where broker's allegations establish that he was not the procuring cause).

      **B.**     **Gary Levenstein was not the borrowers' agent.**

Moore also argues that he was the "procuring cause" of the Racino transaction because he introduced Jefferies to Gary Levenstein—which he claims is the equivalent of introducing Jefferies to the Racino borrowers themselves. This is so, Moore claims without support,[1] because Levenstein is an attorney and therefore the borrower's agent. (Resp. at 5-6.) But this argument fails at the outset because Moore's complaint does not allege that Levenstein was the borrowers' attorney or agent. What the Complaint does allege is that Levenstein arranged a meeting between Jefferies and the borrowers and that Jefferies made its presentation for the Racino financing *to the borrowers themselves*, not to Levenstein. (Compl. at ¶ 9.) It is therefore

---

[1] The only case law Moore cites in support of his Levenstein-as-agent argument are two cases relating to constructive notice to a litigant through an attorney who has entered an appearance on a party's behalf in an ongoing litigation matter. *See Sankun v. Taffer*, 643 N.E.2d 1271 (Ill. Ct. App. 1994); *Welsh v. R.W. Bradford Transp.*, 231 F.R.D. 297 (N.D. Ill. 2005). These cases are plainly inapposite here.

clear under the complaint's own terms that Levenstein's introduction to the borrowers was the procuring (*i.e.* predominating) cause of Jefferies' engagement, not Paul Moore.

### C. Moore cannot state a *quantum meruit* claim under Illinois law unless he was the procuring cause of the transaction.

Tacitly acknowledging that he cannot meet the *Modern Tackle* standard, Moore next claims that he is entitled to *quantum meruit* recovery even if he was not the procuring cause of the transaction. As Jefferies pointed out in its motion to dismiss, Illinois law is precisely to the contrary. *Cruz v. Stapleton*, 622 N.E.2d 1253, 1257 (Ill. Ct. App. 1993) (affirming judgment against broker on *quantum meruit* claim where broker had no reasonable expectation of compensation because he was not the procuring cause of a sale); *Progressive Realty*, 783 F. Supp. at 1120-21 (applying Illinois law and dismissing broker's *quantum meruit* claim because broker did not allege that his efforts procured the defendant's sale and therefore did not confer a valuable service requiring payment). Moore attempts to evade the standard by reading it narrowly to apply only to those transactions where "the deal falls apart." (Resp. at 7.) Moore's reading cannot be squared with *Modern Tackle*, which explicitly acknowledged that although many parties can contribute to the consummation of a sale, only one of those parties—the procuring cause—is entitled to commission. *Modern Tackle*, 297 N.E.2d at 694.

Nor does Moore's citation to an unpublished opinion in *Mirza v. Fleet Retail Finance, Inc.*, 2002 WL 31526549 (N.D. Ill., Nov. 13, 2002), save his *quantum meruit* claim. The *Mirza* court granted summary judgment *against* the plaintiff for all claims premised on the plaintiff's alleged services as a finder because the plaintiff was not the procuring cause of the transaction. But, because the "plaintiff [did] not seek quantum meruit recovery for his activities as a loan finder per se," and thus did not premise his *quantum meruit* claim on being a finder, the court allowed the *quantum meruit* claim to proceed. *Id.* at *4. Here, in contrast, Moore premises his

- 4 -

*quantum meruit* claim entirely on his alleged status as a finder under Illinois law.  Far from supporting Moore's claims, *Mirza* actually supports their dismissal.

## II.   MOORE DOES NOT ALLEGE A VALID CONTRACT.

As Jefferies argued in its motion to dismiss, the purported oral contract alleged in Moore's complaint is vague and unenforceable because it is missing essential terms, most notably the alleged fee that Moore would be paid and the alleged services that Moore would be required to perform in exchange for that fee.  Completely ignoring the missing terms relating to Moore's duties under the purported contract,[2] Moore responds that price is "generally" not an essential contract term in Illinois. (Resp. at 10.)  Moore's generalization is incorrect.  As Moore himself acknowledges (Resp. at 11, n.1), courts will only infer a price term where the other terms of the contract are definite and there is other evidence from which the price term can be determined.  Courts will *not* infer a missing price term where, as is the case here, other essential terms are missing.  Under those circumstances, the courts are uniform in concluding that a contract is indefinite and unenforceable under Illinois law.  *See, e.g., O'Neil & Santa Clause Ltd. v. Xtra Value Imports, Inc.*, 365 N.E.2d 316, 318 (Ill. Ct. App. 1977); *Reese v. Forsythe Mergers Group, Inc.*, 682 N.E.2d 208, 214-15 (Ill. Ct. App. 1997).  Moore's cases are not to the

---

[2] Although Moore never approaches Jefferies' argument head on, he implies that Jefferies' single prior finder's arrangement with Moore can somehow supply missing terms regarding the scope of Moore's duties and obligations under the purported oral contract. But one prior transaction does not a "custom and practice" make.  In order to become binding, a custom "must have antiquity as well as uniformity and universality and have continued for a sufficient length of time that the parties must have contracted in relation to it." *Reimer Bros., Inc. v. Marlis Constr. Co.*, 380 N.E.2d 1160, 1164 (Ill. Ct. App. 1978).

Moore's only citation in support of his one-transaction-custom argument, *Rosenthal v. Battery Partners VI, L.L.C.*, 2007 WL 2028169 (N.D. Ill. July 10, 2007), actually supports Jefferies' position that the purported contract was fatally indefinite. The *Rosenthal* court found that the oral contract at issue in that case was unenforceably vague because "the parties never discussed what duties the [plaintiff] would have." *Id.* at *11.  Moore implies that the Court nevertheless supplemented the missing terms with a prior agreement between the plaintiff and defendant.  Not so.  The oral agreement in *Rosenthal* was to apply equally to two parties, and the other party went on to execute a finalized, complete agreement.  Because "[t]here [was] no reason to think that the defendants would not have entered into the exact same agreement" with the defendant, it provided "a clear interpretive path to the missing terms" of the oral agreement.  *Id.* (internal quotation marks omitted).  Thus, the case does nothing to support Moore's argument that a *prior* transaction between the parties should provide the missing terms to a vague contract.

CHI-1638471v1

contrary—they merely stand for the proposition that a court will impose a reasonableness ceiling on payment due under an otherwise valid and definite contract. *Rush-Presbyterian-St. Luke's Med. Center v. Hellenic Repub.*, 980 F.2d 449 (7th Cir. 1992) (imposing reasonableness ceiling on contract with estimated price term); *In re Marriage of Schmidt*, 684 N.E.2d 1355 (Ill. Ct. App. 1997) (implying reasonableness ceiling to father's agreement to pay for half of daughter's college education in divorce settlement); *Victory Mem. Hosp. v. Rice*, 493 N.E.2d 117 (Ill. Ct. App. 1986) (implying reasonableness ceiling where defendant agreed to pay doctor's "reasonable charges for the services rendered that were not paid by insurance"). Where, as here, a purported contract is so vague that the Court cannot determine what services constitute performance under the contract, it is inappropriate to imply a price term, and the Court must conclude that the "contract" is fatally indefinite under Illinois law. The breach of contract claim should therefore be dismissed.

## **CONCLUSION**

For all the reasons stated above, as well as those stated in Jefferies' Motion to Dismiss, Moore's complaint should be dismissed, with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(6).

Dated: March 25, 2008 Respectfully submitted,

/s/ James R. Daly
James R. Daly
  Bar Registration No. 5181714
  E-mail:  jrdaly@jonesday.com
Nicole C. Henning
  Bar Registration No. 6286386
  Email: nhenning@jonesday.com
JONES DAY
77 West Wacker, Suite 3500
Chicago, IL  60601-1692
Telephone:     (312) 782-3939
Facsimile:     (312) 782-8585

Attorneys for Defendant Jefferies & Company, Inc.

- 7 -

**CERTIFICATE OF SERVICE**

      The undersigned, an attorney, hereby certifies that on March 25, 2008, I electronically filed the foregoing Defendant Jefferies & Company, Inc.'s Reply in Support of Its Motion to Dismiss with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following at their e-mail address on file with the Court:

> Bruce S. Sperling
> Michael G. Dickler
> Matthew Slater
> SPERLING & SLATER, P.C.
> 55 W. Monroe St., Suite 3200
> Chicago, IL 60603

                /s/ Nicole C. Henning
                One of the Attorneys for Defendant Jefferies & Co., Inc.