# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PAUL MOORE,<br><br>      Plaintiff,<br><br>      v.<br><br>JEFFERIES & CO., INC.,<br><br>      Defendant. | Civil Action No. 08 CV 3<br><br>Hon. Blanche M. Manning<br>Magistrate Judge Maria Valdez |

**DEFENDANT JEFFERIES & COMPANY, INC.'S FIRST AMENDED ANSWER TO PLAINTIFF'S COMPLAINT FOR MONEY DAMAGES**

Defendant Jefferies & Company, Inc. ("Jefferies"), through its counsel, answers plaintiff Paul Moore's ("Moore") complaint as follows:

### I.    PARTIES

1.    Plaintiff, Paul Moore ("Moore"), is an Illinois resident.

**ANSWER:** Upon information and belief, Jefferies admits this allegation.

2.    Defendant, Jefferies & Company, Inc. ("Jefferies"), is a foreign corporation. Jefferies maintains an office in Chicago, and it regularly transacts business throughout the state of Illinois.

**ANSWER:** Jefferies admits that it is a Delaware corporation with its principal place of business in New York that conducts business in Illinois and has an office in Chicago.

### II.    JURISDICTION

3.    This Court has subject matter jurisdiction as a court of original and general jurisdiction. This Court has personal jurisdiction over the defendant because, among other reasons, Jefferies transacts business in Illinois, maintains offices in Illinois, and has significant contacts within Illinois. Further, as alleged herein, this cause of action arises from Jefferies transacting business in Illinois with an Illinois resident and/or engaging in unlawful acts in Illinois that caused harm to an Illinois resident. Thus, the defendant has submitted to the personal jurisdiction of Illinois under 735 ILCS § 5/2-209.

**ANSWER:** Jefferies does not dispute that the Court has jurisdiction over this action.

4.      Venue is proper in this Court because, among other reasons, a substantial part of the acts and events that give rise to this action occurred in Cook County, Illinois.  735 ILCS § 5/2-101.

**ANSWER:**  Jefferies does not dispute that venue is proper in the Northern District of Illinois.

### III.    BACKGROUND

5.      This is an action to collect a finder's fee owed by Jefferies to Paul Moore.  The action arises out of Moore's efforts on Jefferies' behalf and at Jefferies' request that enabled Jefferies to bid for and obtain the investment banking assignment to arrange almost $500 million in debt financing for a large casino/racetrack project.  Jefferies earned a fee believed to be in excess of $6 million for arranging the financing.  As more fully alleged below, Moore rendered a valuable service to Jefferies and was the procuring cause of Jefferies' engagement.  But for Moore's efforts, which began in the spring of 2007 and continued thereafter with Jefferies' knowledge and at Jefferies' request, Jefferies would not have obtained the investment banking assignment and would not have received a $6 million-plus fee.  Pursuant to custom and practice, including a very recent occasion where Jefferies paid a finder's fee to a Moore-controlled entity, the expected and appropriate amount of Moore's finder's fee is 15% of Jefferies' fee.  However, after obtaining its fee, Jefferies has refused to pay Moore, despite repeated requests.

**ANSWER:**  Jefferies admits that this complaint purports to be an action for a finder's fee owed by Jefferies to Paul Moore, but denies that he is entitled to any relief.  Answering further, Jefferies admits that the allegations in this complaint relate to Jefferies' financing of a casino/racetrack project, and that Jefferies earned a fee in connection with that financing.  Jefferies denies each and every remaining allegation in Paragraph 5.

6.      More particularly, in early 2007, Moore was working closely with Gary Levenstein (an Illinois resident) on an unrelated project.  Moore learned that Levenstein was also concurrently working on a racetrack/casino project (referred to as "Racino") that required almost $500 million in financing.  Levenstein had substantial duties and responsibilities concerning the procurement of financing for the Racino project on behalf of the prospective borrower, and Levenstein had been working with a different investment bank.

**ANSWER:** Jefferies lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore denies them.

7.      Upon learning of the large prospective financing needed for the Racino project, Moore contacted Jefferies, through Ray Minella ("Minella"), one of Jefferies' managing directors.  Moore asked Minella whether Jefferies wanted to bid on providing the financing and whether Moore should attempt to arrange for Jefferies to do so.  Minella told Moore that

- 2 -

Jefferies very much would like to have a meaningful opportunity to bid on the Racino business, and encouraged Moore to do whatever he could to enable Jefferies to get that opportunity.

**ANSWER:** Jefferies admits that Ray Minella is one of Jefferies' Managing Directors and denies each and every additional allegation in Paragraph 7.

8.      Concurrently, Moore pursued his discussions with Levenstein, who, as alleged above, was then working with a different investment bank and not considering Jefferies for the Racino financing. Moore argued to Levenstein, and truly believed, that Jefferies would be an ideal firm to arrange financing for the Racino project. According to Levenstein, it was only because of Moore's efforts and enthusiastic support of Jefferies that Levenstein came to believe that Jefferies would be the right investment bank for the Racino financing. As Levenstein put it, Moore (verbally) "slapped me upside the head" to convince Levenstein that Jefferies was the ideal firm to deliver the necessary financing.

**ANSWER:** Jefferies lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore denies them.

9.      As a result of Moore's advocacy, Levenstein came to believe that Jefferies would be better suited for the Racino project than the firm he had been working with, and asked Moore to arrange to have Jefferies contact him to make a presentation. Moore then contacted Minella and informed him that Moore had arranged for Jefferies to make its presentation for the Racino financing and that Levenstein expected Minella to call. Soon thereafter, Minella contacted Levenstein, who in turn arranged for Jefferies to make its presentation to the prospective borrower. Jefferies was, in fact, well suited to provide the required financing. Jefferies made a strong presentation, received the Racino project's business, arranged the financing, closed the financing, and earned a fee in excess of $6 million.

**ANSWER:** Jefferies admits that Minella contacted Levenstein, that Levenstein arranged for Jefferies to make its presentation to Indiana Downs borrowers, that Jefferies made a presentation to Indiana Downs borrowers, that it provided financing for Indiana Downs, and that Jefferies earned a fee in exchange for that financing. Jefferies denies the remaining allegations of Paragraph 9.

10.     While Jefferies was attempting to secure the Racino business, it acknowledged to Moore and Levenstein that if Jefferies obtained the Racino financing engagement, Moore would be paid for his efforts. Moreover, at no time before firmly securing the Racino financing engagement did Jefferies ever suggest that Moore would not be paid at the usual finder's rate.

**ANSWER:** Jefferies denies the allegations of Paragraph 10.

- 3 -

## IV.     CLAIMS FOR RELIEF

### COUNT I – QUANTUM MERUIT

11.     Plaintiff realleges paragraphs 1 – 10, as set forth above.

**ANSWER:**  Jefferies incorporates its answers to paragraphs 1-10, as set forth above.

12.     Moore provided valuable services to Jefferies that enabled Jefferies to obtain the engagement to provide investment banking services for the Racino project.  But for Moore's efforts, Jefferies would not have secured that engagement.  Thus, Moore was the procuring cause of Jefferies' engagement for the Racino project and the ensuing fee earned by Jefferies.

**ANSWER:**  Jefferies denies the allegations of Paragraph 12.

13.     Jefferies knowingly availed itself of Moore's services, received the benefit of those services and, as a result, earned a fee in excess of $6 million.

**ANSWER:**  Jefferies denies the allegations of Paragraph 13.

14.     Moore reasonably expected to be compensated for his efforts on Jefferies' behalf; Jefferies understood that Moore expected to be compensated; and justice requires that Moore be compensated for the benefits he conferred upon Jefferies.  Pursuant to custom and practice, including the parties' own prior dealing, the usual and appropriate finder's fee for the services provided by Moore is 15% of Jefferies' fee.

**ANSWER:**  Jefferies denies the allegations of Paragraph 14.

### COUNT II – BREACH OF CONTRACT
### (as an alternative cause of action)

15.     Plaintiff realleges paragraphs 1 – 10, as set forth above.

**ANSWER:**  Jefferies incorporates its answers to paragraphs 1-10, as set forth above.

16.     In his communications with Jefferies, Moore specifically stated that he expected to be compensated if Jefferies secured the investment banking business for the Racino project.  Further, Minella specifically acknowledged to Moore and Levenstein that Jefferies would compensate Moore for his efforts in causing and enabling Jefferies to obtain this financing project.

**ANSWER:**  Jefferies denies the allegations of Paragraph 16.

17.     Pursuant to custom and practice, including the parties' own prior dealing, the finder's fee for the services provided by Moore is 15% of any fee earned by Jefferies.

**ANSWER:**  Jefferies denies the allegations of Paragraph 17.

18.     By reason of the foregoing, the parties entered into a contract whereby in exchange for Moore's valuable services in arranging for Jefferies to bid for and obtain the Racino financing project, Jefferies agreed to pay Moore a finder's fee in the customary amount.

**ANSWER:**  Jefferies denies the allegations of Paragraph 18.

19.     Moore fully performed his obligations as required by the contract and was the procuring cause of Jefferies' engagement.

**ANSWER:**  Jefferies denies the allegations of Paragraph 19.

20.     Jefferies obtained the investment banking assignment, arranged the financing, and was paid a substantial fee -- just as the parties had envisioned.  However, Jefferies breached its obligation to pay Moore the customary finder's fee.

**ANSWER:**  Jefferies denies the allegations of Paragraph 20.

21.     As a result, Moore has been injured and has sustained damages in the amount of the unpaid finder's fee.

**ANSWER:**  Jefferies denies the allegations of Paragraph 21.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

Moore's claims are barred in whole or in part by the doctrine of estoppel.  Prior to its presentation to the Indiana Downs borrowers, Jefferies informed Moore that it had already been in contact with Indiana Downs shareholders and that, in the event that Jefferies received the Indiana Downs business, Jefferies would not be willing to pay Moore a finder's fee.  Moore agreed that, under the circumstances, he would not be entitled to a finder's fee in the event Jefferies received the Indiana Downs business.  Jefferies relied upon Moore's promise when it decided to go forward with its presentation to the Indiana Downs borrowers, and that reliance was foreseeable to Moore.

### Second Affirmative Defense

To the extent that the parties entered into a finder's contract, Moore's breach of contract claim is barred in whole or in part by a failure of consideration because Moore was not the procuring cause of the Indiana Downs transaction.

### Third Affirmative Defense

To the extent that the parties entered into an oral finder's contract, and that contract is subject to New York law, both Moore's breach of contract claim and his quantum meruit claim are barred by New York's statute of frauds, N.Y. Gen. Oblig. § 5-701(a)(10).

Dated: August 8, 2008 Respectfully submitted,

s/ James R. Daly
James R. Daly
jrdaly@jonesday.com
Nicole C. Henning (6286386)
nhenning@jonesday.com
JONES DAY
77 West Wacker
Chicago, IL  60601-1692
Telephone:    (312) 782-3939
Facsimile:    (312) 782-8585